# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**DWAYNE L. TURNER**,

    Petitioner,

v.                                                                  **Civil Action No. 3:08-cv-133**
                                                                                  **(BAILEY)**

**WAYNE A. PHILLIPS**, Warden,

    Respondents.

## ORDER DENYING MOTION FOR RECONSIDERATION OF REPORT AND RECOMMENDATION AND ORDER ADOPTING REPORT AND RECOMMENDATION

This case is pending before this Court on the Opinion/Report and Recommendation filed by Magistrate Judge David J. Joel [Doc. 15] and the Respondents' Objections[1] to Report and Recommendation [Doc. 17] regarding petitioner's Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1], filed by the petitioner after the issuance of the Report and Recommendation.

## BACKGROUND

On July 25, 2006, the petitioner was sentenced to fifty-seven months incarceration by the United States District Court for the Southern District of Alabama. ([Doc. 12-2] ex. 1 ¶ 4). Petitioner was convicted of "Conspiracy to Possess with Intention to Distribute Marijuana" in violation of 21 U.S.C. § 846. On November 28, 2006, the petitioner was

---

[1] Petitioner titled his filing a "Motion to Reconsideration for Opinion/Report and Recommendation," but the Court reviewed the document and finds it not to be a motion for reconsideration but to be objections to the magistrate's Report and Recommendation.

1

designated to FCI Morgantown. ([Doc. 12-4], p. 3). The Court, in its Judgment and Commitment Order, ordered the petitioner to participate in a drug treatment program. ([Doc. 12-3] p. 2).

While incarcerated at FCI Morgantown, the petitioner requested to participate in the Residential Drug Abuse Program ("RDAP"), for which certain inmates may receive a sentence reduction of up to one year upon successful completion of the program. FCI Morgantown determined that petitioner was eligible to participate in the program, but that he was ineligible for early release due to the fact that his current conviction involved possession of a firearm. ([Doc. 12-2] p. 2).

## **DISCUSSION**

The substance of petitioner's claim has previously been addressed by this Court in ***Snipe v. Department of Justice***, 2008 WL 5412868 (N.D.W.Va. December 23, 2008), as follows:

> Pursuant to the Crime Control Act of 1990, Congress required the Bureau of Prisons ("BOP") to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In 1994, Congress authorized the BOP to reduce by up to one year the sentence of "a prisoner convicted of a nonviolent offense" who successfully completes a treatment program. 18 U.S.C. § 3621(e)(2)(B);[2] ***Pelissero v. Thompson***, 170 F.3d

---

[2] This section provides as follows:

The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the

2

442, 443-444 (4th Cir. 1999).

Congress delegated to the BOP authority to administer its drug abuse programs, *see* 28 C.F.R. §550.56, and gave the BOP the discretion to determine which prisoners may participate in RDAP and which prisoners are eligible for sentence reductions. **Lopez v. Davis**, 531 U.S. 230 (2001).

However, Congress did not define the term "nonviolent offense" used in § 3621(e)(2)(B). Consequently, the BOP adopted a regulation in May 1995, which defined "'nonviolent offense' as a converse of 'a crime of violence,'" and "excluded from eligibility for early release under § 3621(e)(2)(B) those inmates whose 'current offense is determined to be a crime of violence' as set forth in 18 U.S.C. § 924(c)(3)." **Pelissero**, 170 F.3d at 444; *see also* 28 C.F.R. § 550.58. In addition to enacting the regulation, in May 1995, the BOP adopted P.S. § 5330.10 which reiterated Regulation 550.58. Additionally, in July 1995, the BOP adopted P.S. § 5162.02 "to further assist case management staff in deciding whether an inmate qualifies for early release under 18 U.S.C. § 3621(e)(2)(B) and under implementing Regulation 550.58." Program Statement § 5162.02 identified offenses that may be crimes of violence and specifically provided that an individual who is convicted of a drug offense under 21 U.S.C. § 841 and received a two-level enhancement for possession of a gun has been convicted of a crime of

---

Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

3

violence. *Id*.

However, as noted by the Fourth Circuit in ***Pelissero***, some federal courts held that possession of a firearm by a felon is not a crime of violence under 18 U.S.C. § 924(c), so the BOP adopted a revised Regulation 550.58 in October 1997. In its revised regulation, the BOP deleted the crime of violence definition from 18 U.S.C. § 924(c), but stated that at the director's discretion inmates whose current offense is a felony which involved the carrying, possession, or use of a firearm or other dangerous weapon were excluded from eligibility for early release. The BOP amended P.S. § 5330.10 to reflect this change and also adopted P.S. § 5162.04, effective October 9, 1997, which provided that "[a]n inmate will be denied the benefits of certain programs if his or her offense is either a crime of violence or an offense identified at the discretion of the Director of the Bureau of Prisons."

The 1997 regulation was an interim regulation which was finalized on December 22, 2000. *See* 65 Fed. Reg. 80745.

The APA requires administrative agencies, including the BOP, to provide notice of a proposed rule and a public comment period. *See* 5 U.S.C. § 553; ***Chen Zhou Chai v. Carroll***, 48 F.3d 1331 (4th Cir. 1995). However, the notice and comment period of the APA does not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3).

All but one of the asserted deficiencies in the BOP regulation have

been disposed of in **Lopez v. Davis**, 531 U.S. 230 (2001). In **Lopez**, the Supreme Court described 28 C.F.R. § 550.58 as an "implementing regulation" and found that the regulation was a permissible exercise of the BOP's discretion under 18 U.S.C. § 3621(e)(2)(b) and that the BOP's interpretation was reasonable both taking into account the pre-conviction conduct and in making categorical exclusions.

The **Lopez** decision forecloses all issues presented in this case, except the issue left open by the Supreme Court in footnote 6 of the decision, which reads as follows:

> *Amici* urge reversal on the ground that the Bureau violated the notice and comment requirements of the Administrative Procedure Act when it published the 1997 regulation. Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 18-24. We decline to address this matter, which was not raised or decided below, or presented in the petition for certiorari. **Blessing v. Freestone**, 520 U.S. 329, 340, n. 3 (1997).

531 U.S. at 244, n. 6.

This Court does not find the open issue to be a genuine issue. The regulation in question is an interpretive regulation. **Minotti v. Whitehead**, 584 F.Supp.2d 750, 2008 WL 4791462 (D. Md. Oct. 31, 2008); **Pelissero v. Thompson**, 170 F.3d 442 (4th Cir. 1999); **Patterson v. DeWalt**, 2006 WL

5

1520724 (D. Md. May 26, 2006); **Keller v. Bureau of Prisons**, 2006 WL 4808626 (D. Md. Nov. 15, 2006); **Chevrier v. Marberry**, 2006 WL 3759909 (E.D. Mich. Dec. 20, 2006). The "notice and comment" requirements of the Administrative Procedure Act ("APA") do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(A).

Furthermore, the final regulation, effective December 22, 2000, complied with the "notice and comment" requirement of the APA. **Chevrier**, *supra* at *9; **Baxter v. Quintana**, 2008 WL 5115046, *6 (W.D. Pa. Dec. 4, 2008).

Accordingly, this Court finds that the regulation at issue is not invalid due to a failure to comply with the "notice and comment" requirements of the APA.

This does not end the inquiry, however, since the Ninth Circuit previously found 28 C.F.R. § 550.58 to be invalid as violative of § 706 of the APA because it failed to articulate a rational basis for the manner in which the BOP exercised its discretion and thus was arbitrary and capricious. **Arrington v. Daniels**, 516 F.3d 1106 (9th Cir. 2008).

Most of the courts outside of the Ninth Circuit which have considered the validity of the regulation in light of **Arrington** have found the decision not to be persuasive and have declined to follow it. This Court joins that group.

In an unpublished decision, the Sixth Circuit found that the issue of

whether the BOP's decision to exclude the class of persons whose crimes involved firearms was arbitrary and capricious was directly controlled by the Supreme Court's decision in **Lopez**. **Harrison v. Lamanna**, 19 Fed.Appx. 342 (6th Cir. 2001). In **Neal v. Grondolsky**, 2008 WL 4186901 (D. N.J. Sept. 9, 2008), the district court rejected **Arrington** and found the issue of arbitrariness and capriciousness to have been settled by **Lopez**.

In **Gatewood v. Outlaw**, 2008 WL 2002650 (E.D. Ark. May 8, 2008), the court also rejected **Arrington**, found that it conflicted with the reasoning in **Lopez**, and found the regulation valid under § 706 of the APA.

In **Minotti v. Whitehead**, 584 F.Supp.2d 750, 2008 WL 4791462 (D. Md. Oct. 31, 2008), Judge Titus found **Arrington** to be unpersuasive and misguided. In his discussion, Judge Titus wrote:

> **Arrington** is distinguishable because it violates the very administrative precept that it purports to apply. Specifically, when an agency explains its rationale for a decision, its decision is not arbitrary and capricious because a court's review under the arbitrary and capricious standard of § 706(2)(A) of the APA is narrow and deferential. The Court must consider only whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; the Court "is not empowered to substitute its judgment for that of the agency."

7

*See, e.g.* 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971). The Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 286 (1974), but a Court may not "may not supply a reasoned basis for the agency's action that the agency itself has not given." *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947). It is well-settled that the Court is confined to examining the administrative record to determine whether the agency has articulated a rational basis for its decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

The BOP provided two rationales in *Arrington* for the promulgation of the 2000 Final Rule: the increased risk that offenders with firearms convictions might pose a risk to the public and the need for uniformity in the application of eligibility regulations. *Arrington,* 516 F.3d at 1116. The Ninth Circuit held that the risk to the public was a "*post hoc* rationalization" that was not contained within the administrative record thereby eliminating the justification for any deference to the agency's action. *Id.* As to the second justification (uniformity in application of eligibility regulations), the Ninth Circuit held that

despite the fact it was contained in the administrative record, the BOP could have attained its goal of uniformity by the categorical inclusion-rather than exclusion-of all prisoners with nonviolent convictions involving firearms. *Id.* Though the Ninth Circuit explained that "either choice in all likelihood would have withstood judicial scrutiny," but because the BOP "offered no explanation for why it exercised its discretion to select one rather than the other" that rendered its decision arbitrary and capricious. *Id.*

Closer examination of ***Arrington*** reveals the fatal flaw in the Ninth Circuit's reasoning. The BOP provided an explanation for why it exercised its discretion to categorically exclude rather than include an entire class of inmates: it was concerned about uniformity. *Id.* However, that was not an explanation that the Ninth Circuit was willing to accept and, as such, the Ninth Circuit substituted its judgment for that of the agency. The legislative history behind § 3621 explicitly notes that "[s]ubstance abuse treatment for prison inmates is a powerful tool for reducing recidivism, easing prison overcrowding, and ultimately preventing crime." H.R.Rep. No. 320, 103 Cong., 1st Sess., 1993 WL 537335, at *4 (1993). In amending § 3621(e)(2)(B), the House Report noted that the

> amendment "authorizes the [BOP] to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, based on criteria to be established and *uniformly applied* by the [BOP]." *Id.* at *7. Moreover, the Supreme Court explicitly agreed with and deferred to the BOP's "reasonabl[e] conclu[sion] that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." *Lopez,* 531 U.S. at 244. Taken in context, the BOP's concern about uniformity in application is not arbitrary or capricious but rather is the consequence of its fidelity to Congress's mandate. The connection between firearms, drug offenses, and violence is fully supported by the language of the statute, *Lopez,* and just plain common sense. Accordingly, the BOP's explanation for its interpretative rule is neither arbitrary nor capricious, but rather was manifestly correct.

2008 WL 4791462 at *10.

In *Baxter v. Quintana*, 2008 WL 5115046 (W.D. Pa. Dec. 4, 2008), the Court also declined to follow *Arrington*. In its decision, the Court stated:

> The Ninth Circuit refused to consider the rationale that the

Bureau chose the categorical exclusion because of the increased risk that offenders with convictions involving firearms might pose to the public. [516 F.3d] at 1113. That public safety rationale, the Ninth Circuit concluded, was not stated in the administrative record, but only was articulated in the Bureau's brief to the Supreme Court in *Lopez*. *Id.* (citing *Lopez,* 531 U.S. at 236 (quoting Brief for Respondents at 30)). The Ninth Circuit held that the public safety rationale "is precisely the type of *'post hoc* rationalization[ ]' of appellate counsel that we are forbidden to consider in conducting review under the APA." *Id.* (quoting *Burlington Truck Lines, Inc.,* 371 U.S. at 168). Therefore, the Ninth Circuit concluded, although the public safety rationale could be considered in evaluating the validity of the regulation under *Chevron, see Lopez,* 531 U.S. at 36-45, it could not be taken into account when evaluating the validity of the regulation under 5 U.S.C. § 706(2)(A) of the APA. *Id.* at 1113-16.

Despite this reasoning, the APA's "arbitrary and capricious" standard of review is "narrow." A federal court may only "find that an action is arbitrary and capricious if the agency relied on factors other than those intended by Congress, did not consider 'an important aspect' of the issue confronting the

agency, provided an explanation for its decision which 'runs counter to the evidence before the agency,' or is entirely implausible." *Rite Aid of Pennsylvania, Inc. v. Houstoun*, 171 F.3d 842, 853 (3d Cir. 1999) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.,* 463 U.S. at 43-44). This Court "must 'uphold [an agency's] decision of less than ideal clarity *if the agency's path may reasonably be discerned.*" *Id*. (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.,* 463 U.S. at 43 (omitting internal citations) (bracket in original) (emphasis added). "[O]n occasion, regulations with no statement of purpose have been upheld where the agency's purpose was considered *obvious and unmistakable.*" *Citizens to Save Spencer County v. U.S. Environmental Protection Agency*, 600 F.2d 844, 884 (D.C. Cir. 1979) (emphasis added). Because none of the requirements for an arbitrary and capricious finding is apparent here, and because the agency's decision is "reasonably discerned," this Court declines to follow the Ninth Circuit ruling in *Arrington*.

2008 WL 5115046 at *10.

The court added:

The Bureau's rationale for promulgating 28 C.F.R. § 550.58(a)(1)(vi)(B) withstands the APA's highly deferential

standard of review. In its comments in the Federal Register, the Bureau explained that it was amending 28 C.F.R. § 550.58 (1995) in order to address the legal issues raised by the courts of appeals in the litigation that followed the enactment of that regulation and PS 5162.02, so that it could uniformly apply its policies throughout the country. 65 Fed.Reg. 80747-48 (Dec. 22, 2000). That rationale is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

Moreover, that the Bureau chose the categorical exclusion set forth in 28 C.F.R. § 550.58(a)(1)(vi)(B) because of the increased risk that felons with convictions involving firearms might pose to the public can be reasonably discerned from the administrative record. It is a point that is evident from review of the litigation to which the Bureau referred in the Federal Register. The program statement at the center of that litigation explained that the Bureau originally chose to categorically exclude inmates convicted of drug offense violations who received sentence enhancements for possession of a weapon because the "possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property." PS 5162.02, § 9. Also, the legal decisions issued

13

by the courts of appeals in that litigation showed that the Bureau sought to categorically exclude from the early release benefit certain felons who used guns during their offenses because "the BOP equate[s] gun possession and drug dealing with violence." *Pelissero*, 170 F.3d at 445; *see, e.g.,* *Venegas* [*v. Henman*], 126 F.3d at 765 (the Bureau's "determination that a sufficient nexus exists between the offenses at issue and a substantial risk of violence is a valid exercise of discretion[.]"). When the Bureau's effort to categorically exclude such inmates was frustrated by courts of appeals that invalidated its approach, the Bureau amended its regulation so as to achieve the same result through a method that would cure the problems identified by those courts. In sum, the public safety rationale justifying the categorical exclusion of inmates whose current offense is a felon that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosive was not a *"post hoc"* rationalization, but was evident in the litigation that prompted the amendment to 28 C.F.R. 550.58 (1995) and which the Bureau referenced in the Federal Register.

2008 WL 5115046 at * 11.

Additionally... in *Sinclair v. Eichenlaub*, 2008 WL 5235981 (E.D.

Mich. Dec. 15, 2008), the district court disagreed with *Arrington* and relied upon *Minotti* in upholding the challenged regulation. This Court, agreeing with the above authorities, also declines to follow *Arrington* and finds the challenged regulation to be proper.

**Snipe v. Department of Justice**, 2008 WL 5412868, *1, *1-*6 (N.D.W.Va. December 23, 2008),

## PETITIONER'S OBJECTIONS

Plaintiff filed objections to the Report and Recommendation on January 26, 2009. Plaintiff lists five objections: (1) **Lopez v. Davis**, 531 U.S. 230 (2001); (2) **Pelissero v. Thompson**, 170 F.3d 442 (4th Cir. 1999); (3) BOP's Program Statement No. 1040.04; (4) The logic of granting time off; and (5) the Semantics of the BOP. The Court will address petitioner's objections in turn.

First, petitioner appears to argue under the section titled "**Lopez v. Davis**, 531 U.S. 230 (2001)" that because the Ninth Circuit in **Arrington** was interpreting **Lopez** that this Court is somehow bound by the **Arrington** interpretation of **Lopez**. That is a fundamental misunderstanding of the way court precedent functions. This Court is bound by **Lopez** and has interpreted **Lopez** contrary to the Ninth Circuit's interpretation in **Arrington.** (*See* Discussion, *supra*). Plaintiff's main objection as to this structure is that **Arrington** only binds courts in the Ninth Circuit. That is an accurate statement, but in no way does that amount to a misapplication of the law by this Court. Accordingly, petitioner's objection to the Report and Recommendation is **OVERRULED**.

Second, in the section titled "**Pelissero v. Thompson**, 170 F.3d 442 (4th Cir.

15

1999)," petitioner argues that *Pelissero* is not controlling with respect to the case at bar as it addresses a previous version of the regulation at issue here. The Court agrees that *Pelissero* is not directly on point, but the Court also never interpreted *Pelissero* as controlling the outcome of the instant petition. In the Report and Recommendation, the Court used *Pelissero* to trace the history of the current regulation. As such, petitioner's objection is irrelevant and, therefore, **OVERRULED.**

Third, petitioner objects to the Report and Recommendation on the basis that the BOP's Program Statement No. 1040.04 states that the BOP 'must not discriminate.' Petitioner is housed at FCI Morgantown and the BOP regulation petitioner challenges is no different at any other BOP facility. The *Arrington* decision merely binds those courts in the Ninth Circuit, not this Court. As such, petitioner's objection on the basis of the BOP Program Statement is **OVERRULED**.

Finally, petitioner argues that the Report and Recommendation fails to consider "the logic of granting time off" and the "Semantics of the BOP." Neither of these arguments are legal arguments. Petitioner essentially argues that he would be better off if he were allowed out of jail after completing the R.D.A.P. program instead of being put back into the general population; and that the BOP should not be allowed to interpret the phrase 'crime of violence.' Congress in not specifying a definition for 'crime of violence' delegated to the BOP the authority to interpret the regulation. The BOP has interpreted that regulation to include crimes in which a firearm was involved, and this Court has upheld the BOP interpretation. As such, petitioner's objections are **OVERRULED**.

Petitioner's arguments essentially come down to his dissatisfaction with the Court's

interpretation of case law, and his dissatisfaction with the fact that Ninth Circuit opinions do not bind this Court. After reviewing petitioner's objections, the Court finds based on the foregoing reasoning that petitioner's objections to the Report and Recommendation should be **OVERRULED** and the Magistrate's Report and Recommendation **ADOPTED**.

## CONCLUSION

For the reasons stated above:

1. The Magistrate Judge's Opinion/Report and Recommendation [Doc. 15] is **AFFIRMED** and **ADOPTED** as it recommends respondent's Motion to Dismiss [Doc. 11] be granted, that the petitioner's § 2241 [Doc. 1] be denied and dismissed with prejudice, and that petitioner's Motion for Issuance of writ; return; hearing; decision pursuant to 28 U.S.C. § 2234 [Doc. 7] be dismissed as moot and the petitioner's Motion for Entry of Default [Doc. 6] be denied.

2. Respondent's Motion to Dismiss [Doc. 11] is hereby **GRANTED**.

3. Petitioner's § 2241 [Doc. 1] is hereby **DENIED** and **DISMISSED with prejudice**.

4. Petitioner's Motion for Issuance of writ; return; hearing; decision pursuant to 28 U.S.C. § 2234 [Doc. 7] is hereby **DISMISSED** as **MOOT**.

5. Petitioner's Motion for Entry of Default [Doc. 6] is hereby **DENIED** as **MOOT**.

6. This civil action is **DISMISSED** and dropped from the active docket of this Court.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to all counsel of record

herein and to mail a copy to the *pro se* petitioner.

      **DATED**: March 13, 2009.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE